UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x
GARY KO SHENG CHUANG, YIH-HER
LEE, TZU-KUANG LIU AND CHUNG
YUNG WANG,

               Plaintiffs,

    -against-

T.W. WANG INC. d/b/a "WORLD
JOURNAL" And WORLD JOURNAL
CULTURE FOUNDATION, INC. d/b/a
"WORLD JOURNAL,"

               Defendants.

----------------------------------------------------x

<u>MEMORANDUM AND ORDER</u>
04 Civ. 4988 (ILG)

GLASSER, United States Senior District Judge:

**Introduction**

      Plaintiffs Gary Ko Sheng Chuang ("Plaintiff Chuang"), Yih-Her Lee ("Plaintiff Lee"),

Tzu-Kuang Liu ("Plaintiff Liu") and Chung Yung Wang ("Plaintiff Wang", and collectively, the

"plaintiffs")[1], filed a complaint alleging that their employer, the publisher of <u>The World Journal</u>

newspaper ("World Journal" or the "defendant") unlawfully dismissed each of them on the basis

of their age.[2]

      The plaintiffs bring their age discrimination claims under the Federal Age Discrimination

in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), the New York State Human Rights Law

("NYSHRL"), § 296, and the New York City Administrative Code, § 8-107(a).  The defendant

---

[1] The Court adds "Plaintiff" to the surnames of the four plaintiffs to distinguish them from persons with the same or similar surnames.

[2] The defendant states that it has been "improperly sued herein as T.W. Wang Inc. d/b/a "World Journal", and World Journal Culture Foundation, Inc. d/b/a "World Journal"."  (Defendant's Local Rule 56.1 Statement, dated Sept. 28, 2006 ("Def. 56.1 Statement"), ¶ I.A.1.)  The defendant does not provide a correct name, but refers to itself as "World Journal" or "WJ".  The Court deems any future defenses based on this alleged defect as waived.

1

has moved for summary judgment as to all claims pursuant to Fed. R. Civ. P. 56(c). For the reasons below, the defendant's motion is granted as to all plaintiffs.

## I. Background

The defendant, based in Whitestone, New York, publishes <u>The World Journal</u>, North America's largest Chinese language daily newspaper and employs more than 300 people. (Def. 56.1 Statement, ¶¶ I.A.1, I.A.2, I.A.8.) The four plaintiffs were employees of World Journal, each between the ages of fifty-one and fifty-four at the time of their respective severance from World Journal in the spring and summer of 2004. While it is undisputed that Plaintiffs Lee, Liu and Wang were dismissed by World Journal, World Journal contends that Plaintiff Chuang voluntarily resigned. The parties also dispute whether Plaintiff Lee and Plaintiff Liu suffered adverse employment actions prior to their terminations when they were reassigned to different duties. (Complaint, dated Nov. 11, 2004 ("Compl."), ¶ 81.)

## II. Summary Judgment and ADEA

Summary judgment under Fed. R. Civ. P. 56(c) is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). When evaluating a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." <u>L.B. Foster Co. v. Am. Piles, Inc.</u>, 138 F.3d 81, 87 (2d Cir.1998) (citing <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986)). The party opposing summary judgment "may not rely on

conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998). Instead, the opposing party "must designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. A genuine factual issue exists if there is sufficient evidence favoring the opposing party for a jury to return a verdict in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

While it is "sometimes noted that an extra measure of caution is merited in [granting] summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions," Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (citing Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir.1994)), "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." Id. (citing McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997)). "It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001).

Under ADEA, an employer of twenty or more persons may not discharge an employee by reason of his or her age if that employee is at least forty years-old. 29 U.S.C. § 623(a)(1) ("It shall be unlawful for an employer to . . . discharge any individual . . . because of such individual's age. . ."); 29 U.S.C. §§ 630(b), 631(a). Claims under ADEA are governed by the three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193, 195-96 (2d Cir. 2007). See Woroski v. Nashua, 31 F.3d 105, 108 (2d Cir.1994) ("We analyze ADEA claims under the same framework as claims brought pursuant to Title VII.").

First, the plaintiff must make a prima facie showing of discrimination. To do so, a plaintiff must adduce evidence showing (i) membership in the protected age group, (ii) qualifications for the job at issue, (iii) an adverse employment action, and (iv) that the adverse action occurred under circumstances giving rise to an inference of discrimination. D'Cunha, 479 F.3d at 195 (citing Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003)). "Though the plaintiff has the ultimate burden of proving the elements of the claim by a preponderance of the evidence, the showing the plaintiff must make as to the elements of the prima facie case in order to defeat a motion for summary judgment is *de minimus*." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203-04 (2d Cir. 1995) (internal citations omitted).

Once the plaintiff has adduced evidence sufficient to set forth a prima facie case, the defendant then has the burden of producing "through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." Grady v. Affiliated Central, Inc., 233 F.3d 149 (2d Cir. 1997) (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993)).

Should the defendant carry this burden, it will be entitled to summary judgment unless the plaintiff puts forth adequate evidence to support a rational finding that the reason proffered by the defendant is a pretext for discrimination or retaliation. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). "[O]nce the employer has proffered a [nondiscriminatory] reason for its action, all presumptions and special rules drop away . . . [and] the plaintiff, in order to prevail, must have evidence from which the factfinder can reasonably find the essential elements of the claim." James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000). "In meeting this ultimate burden, an ADEA plaintiff need not show that age was the only factor

4

in the employer's discharge decision, but that age was a determinative factor." Levin v. Analysis & Tech., Inc., 960 F.2d 314, 317 (2d Cir. 1992). Evidence of discrimination need not be direct, as such proof is seldom available, but may be circumstantial. Carlton v. Mystic Transportation, Inc., 202 F.3d 129, 135 (2d Cir. 2000).

The same analysis governs the plaintiffs' New York State and New York City claims. Abdu-Brisson, 239 F.3d at 466; Garone v. United Parcel Service, Inc., 436 F.Supp.2d 448, 473 (E.D.N.Y. 2006) (Glasser, J.) ("Because claims under the NYSHRL are analyzed identically to claims under the ADEA and Title VII, the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under the ADEA and Title VII. Accordingly, the Court treats the federal, state and city claims together.") (internal citations omitted).

The claims of each plaintiff are evaluated in turn below. World Journal concedes that each of the plaintiffs is over the age of forty and was qualified for his position. World Journal also concedes that the dismissals of Plaintiffs Lee, Liu and Wang constitute adverse employment actions, but argues that Plaintiff Chuang was not subjected to any adverse employment action because he voluntarily resigned. World Journal further argues that each of the plaintiffs has failed to show that he was dismissed under circumstances giving rise to an inference of discrimination.

## III. Discussion

### A. Plaintiff Chuang

Plaintiff Chuang was born on November 8, 1950. (Def. 56.1 Statement, ¶ II.A.1.) At the age of thirty-eight, he was hired by World Journal in 1989 as a pressman in its Production Department which is responsible for the daily printing of The World Journal. (Compl. ¶ 14; Def.

56.1 Statement, ¶ II.A.3.)  Chuang's primary responsibility was operating the automatic pasting machine, used for moving new rolls of printing paper onto the press so that the press could run continuously.  (Def. 56.1 Statement, ¶ II.A.9.)  Plaintiff Chuang's last day of employment with World Journal was July 7, 2004.  (Id. ¶ II.C.4.)  At the time, he was fifty-three years old.

The facts leading chronologically to the departure of Plaintiff Chuang from World Journal are as follows:

On July 1, 2004, Plaintiff Chuang wrote a letter stating "Due to other personal career planning, I hereby submit my resignation effective August 16, 2004."  (Def. 56.1 Statement ¶ II.B.2.)  The text of the letter that Plaintiff Chuang wrote is not disputed.  The head of World Journal's pressroom, Supervisor Wen Hua Liu ("Supervisor Liu"), forwarded the letter to World Journal's Financial Department requesting that Plaintiff Chuang's unused vacation pay be calculated.  (Def. 56.1 Statement ¶ II.B.3.)

On July 7, 2004, Supervisor Liu submitted a report to Edwin Ling ("Ling") the Manager of the Production Department and Deputy General Manager of the Circulation Department.[3]  The report read:

> Printing Technician Gary Ko Sheng Chuang originally submitted his resignation stating that he will resign on 08/16/2004.  All of a sudden, he told me this morning that he will not be coming back to work tonight (for 07/08/2004 publishing date).  This makes me not know how to handle the situation but to ask for instruction from higher officials.

(Report prepared by Wen Hua Liu dated July 7, 2004 ("Liu Report").)  Ling returned the report to Supervisor Liu with the following written instructions:

> 1) Chuang last worked to 07/07/2004; please forward to Financial Department for settling his wages.

---

[3] Different titles for Edwin Ling appear throughout the record, but it is clear that he is responsible for the Production Department and the Circulation Department and answers only to World Journal Vice President Tina Lee and President Howard Lee.

2) Chuang's sudden departure has caused disruption for the printing section's normal shift schedule. I have asked Supervisor Liu to make temporary schedule change suspending days off and actively look for suitable person to fill the position at the same time.

(Liu Report; Affidavit of Edwin Ling dated Sept. 26, 2006 ("Ling Aff.") ¶ 6.)

On July 8, 2004, Plaintiff Chuang was notified by letter that his employee benefits were discontinued given his termination on July 7. (Deposition of Gary Ko Sheng Chuang, dated Oct. 11, 2005 ("Chuang Dep."), 66.) The record is bare of any evidence that Plaintiff Chaung sought to inquire regarding the reason for his termination as of that date; sought to clarify that his resignation was as of August 16 and not July 7; or sought to tell the World Journal that he never intended to resign at all and there is an obvious misunderstanding in the matter.

Given the foregoing, World Journal contends that Plaintiff Chuang voluntarily resigned. Ling concluded, in reliance upon Supervisor Liu's report, that Plaintiff Chuang voluntarily resigned on July 1, effective August 16, and that he accelerated the effective date to July 7.

Plaintiff Chuang proffers a different version of the events. At his deposition, he testified that he made a request of Supervisor Liu to allow him vacation time so that he could tend to a sick relative. (Chuang Dep. 26-28.) Supervisor Liu told him, he testified, that "unless you resign, you have a right to submit a memo to say that you resign, then you can't take these days off" because World Journal was not allowing employees to take vacation days. (Id. at 28.) He then testified that Supervisor Liu advised him that if he really wanted the vacation days, he should "write a memo and say that your health is not good and your job is very tiring and you want to make some change, just write it like that." (Id.) Plaintiff Chuang began writing, choosing to say that career planning prompted the letter, rather than his health. (Id. at 28-30.) Plaintiff Chuang testified that Supervisor Liu then took the letter from him before he was finished, threw it in the trash and sent him back to work. (Id. at 37.) "Liu just took it away. He

said we really short of hands right now.  Besides, as an operator for the press machine, it is not like I can replace you with anybody."  (Id. at 28.) [4]

Plaintiff Chuang also testified that early in his shift, which began at 11:00 pm on July 6 and ended after 5:00 a.m. on July 7, he injured his knee and requested a day off which was granted by Supervisor Liu.  (Chuang Dep. 40-51, 60.)  Plaintiff Chuang denies resigning on July 7.  (Plaintiffs' Response to Def. 56.1 Statement, dated Nov. 14, 2006, ¶ II.C.1.)

In support of his claim of discrimination, Plaintiff Chuang testified to having heard some age-related comments during the course of his employment, such as:

- Supervisor Liu, four years younger than Plaintiff Chuang, often asked whether Chuang had symptoms of senility or Alzheimer's, including on one occasion when Chuang miscalculated his vacation days.  (Chuang Dep. 94-96.)
- Plaintiff Chuang was told by Deputy Supervisor Chang I-Chung ("Deputy Supervisor Chang") that Supervisor Liu did not want to hire a person in his forties to work in the press room because of that person's age.  (Id. at 100.)  Around that time, three individuals in their twenties or thirties were hired.  (Id. at 100-01.)
- Plaintiff Chuang, when called upon to instruct an employee in his late twenties on the operation of a machine, was instructed by Deputy Supervisor Chang not to train older workers who wished to receive the same training.  (Id. at 98-99.)
- Co-workers said that Plaintiff Chuang was too old for his job and would intentionally hit him on his shoulder which was sore from his work.  (Id. at 96-97.)  Supervisor Liu told Plaintiff Chuang not to "mind these little things that people say or do to you." (Id. at 98.)
- Another co-worker yelled "Chuang you getting fuddy-duddy?" when Plaintiff Chuang broke the paper being fed into the press.  (Id. at 106-07.)
- In 1996, when Plaintiff Chuang tried to procure employment at World Journal for his wife, a manager told him that she was too old and that the company was looking for people in their twenties.  (Id. at 102.)

Immediately following Plaintiff Chuang's purported termination, the ages of the twenty-four pressmen, including Supervisor Liu and Deputy Supervisor Chang, ranged from twenty to

---

[4] All of the transcripts submitted by the parties were of depositions taken with the aid of a Chinese language translator.  It is not made known whether the transcripts were reviewed by the deponent and acknowledged to be accurate.  The stark differences between the clear text of the resignation letter of July 1, Plaintiff Chuang's testimony as to what Supervisor Liu told him to write, and what he said he wrote are irreconcilable.

fifty-five.  (Ling Aff. ¶ 8.)  There were fourteen pressmen in their forties and three in their fifties,

including one pressman, Meng Chio Chen, who was older than Chuang.  (Id.)

1.  Inference of Discrimination

World Journal argues that Plaintiff Chuang has failed to show that his termination took

place under circumstances giving rise to an inference of discrimination.  In support of such an

inference, Plaintiff Chuang has testified to age-related comments directed at him personally and

comments purportedly demonstrating management's preference for younger workers.

"The relevance of discrimination-related remarks does not depend on their offensiveness,

but rather on their tendency to show that the decision-maker was motivated by assumptions or

attitudes relating to the protected class."  Tomassi v. Insignia Financial Group, Inc., 478 F.3d

111, 116 (2d Cir. 2007).

Based on the evidence proffered by World Journal, the formal decision-maker in the

termination was Ling, who effectively terminated Plaintiff Chuang by instructing Supervisor Liu

to seek a replacement and (through Liu) directing the Financial Department to settle his wages.

The inference is compelling that Ling's instructions reflected his reliance on Supervisor Liu's

report to the effect that Chuang had accelerated the date of his retirement announced in his letter

of July 1.  Plaintiff Chuang has described no remarks or actions by Ling showing discriminatory

animus.

"The more remote and oblique the remarks [of a non-decision-maker] are in relation to

the employer's adverse action, the less they prove that the action was motivated by

discrimination."  Tomassi, 478 F.3d at 115.   However, "where [a] subordinate, by concealing

relevant information from the decisionmaking employee or feeding false information to him, is

able to influence the decision," the Court may look to the conduct of that subordinate to determine whether, for his own discriminatory reasons, the subordinate influenced the decision-maker to take an adverse employment action. Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1400 (7th Cir. 1997) (Posner, J.). See Rose v. New York City Bd. of Educ., 257 F.3d 156, 162 (2d Cir. 2001). Therefore, insofar as Ling was acting based on information provided by Supervisor Liu, the Court may examine his conduct. Deputy Supervisor Chang, however, was clearly neither a decision-maker nor did he exercise influence over Ling. (See Chuang Dep. 51.)

Deputy Supervisor Chang's remarks are so "remote and oblique" that they must be disregarded. His repetition of an alleged remark by Supervisor Liu stating that he did not want to hire older workers, and his admonition not to train older workers on the operation of a machine are simply too disconnected from the employment decision to be taken into consideration. Similarly, the comment regarding Plaintiff Chuang's wife is far too remote in time to show any nexus with his termination.

Remarks, such as the one by Supervisor Liu dismissing the harassment of Plaintiff Chuang by his co-workers, and the "fuddy-duddy" remark are more of the type characterized as stray remarks that are not probative of the attitudes of decision-makers. See Tomassi, 478 F.3d at 115-16.

The time, place and circumstances under which these remarks were made are not stated, nor are they alleged to have been made by persons who had the authority to terminate his employment. The foregoing aside, the statements proffered as manifestations of age-discrimination, including Supervisor Liu's "senility" and "Alzheimer's" comments, are more accurately characterized as innocuous workplace banter. Such comments, which may conceivably be construed as age-biased generally, do not bolster, much less support, Plaintiff

Chuang's claim.  Discrimination in the air, so to speak, will not do.  The plaintiff must show that he was terminated because of his age and there is neither a jot nor a tittle from which such an inference to that effect can be drawn.  There is no evidence to suggest that over a course of fifteen years in the employ of the defendant, Plaintiff Chuang was disciplined for incompetence, lateness or insubordination.  There is no evidence proffered from which an inference of personal animus or harassment can be drawn.  Therefore, Plaintiff Chuang has failed to make a prima facie showing that the circumstances surrounding his termination give rise to an inference of discrimination.

2.  World Journal's proffered legitimate, nondiscriminatory reason

Even if *arguendo*, Plaintiff Chuang had made a prima facie showing of age discrimination, World Journal has identified Chuang's own voluntary resignation as the nondiscriminatory reason for the discontinuation of his employment.  As evidence of this, World Journal has provided the July 1 letter and Supervisor Liu's July 7 report, the authenticity and admissibility of which have not been challenged.

3.  Plaintiff Chuang's evidence that World Journal's reason is a pretext for discrimination

In his prima facie case, Plaintiff Chuang failed to make an adequate showing of circumstances giving rise to an inference of discrimination.  However, even if he had made such a showing, when confronted with the documentary evidence adduced by World Journal, Plaintiff Chuang's case collapses.

To reconcile Plaintiff Chuang's testimony and the documentary evidence proffered by World Journal, a reasonable trier of fact would have to believe that: (1) Supervisor Liu,

deceptively and with discriminatory intent, retrieved the July 1 resignation letter from the waste basket and forwarded it to the Financial Department; (2) in his report to Ling, Supervisor Liu fabricated, willfully misrepresented, or at least completely misinterpreted, any statement by Plaintiff Chuang on July 7 about not returning to work; and (3) Plaintiff Chuang did not clarify the situation by alerting World Journal that he did not intend to resign. No evidence has been proffered as to whether Plaintiff Chuang contacted World Journal to inquire about the letter he received regarding his termination on July 8.

An objective assessment of the facts compels the conclusion that Plaintiff Chuang was not terminated, but voluntarily resigned. Even if any reasonable trier of fact were able to reconcile Plaintiff Chuang's testimony with the documentary evidence provided by World Journal, the charges of a discriminatory motive cannot sustain a finding of discrimination under the summary judgment standard. The proffered comments are not substantiated by any other evidence before the court, as to their timing and frequency, or the truth of the policies regarding hiring or training espoused therein. Without such information, no reasonable trier of fact could determine that there was a connection between the comments and Plaintiff Chuang's termination.

The Court finds that a review of the admissible evidence shows that no reasonable factfinder could conclude that Plaintiff Chuang's purported termination was motivated by age discrimination. The defendant's motion is granted with respect to Plaintiff Chuang.

**B. Plaintiff Lee**

Plaintiff Lee was born on March 2, 1952. (Compl. ¶ 32.) He was hired by World Journal in July 2000 at the age of forty-eight as a Staff Member in its General Affairs Department on the initiative of Nancy Yeh ("Yeh") who had worked with Plaintiff Lee in Taiwan approximately ten

years prior to his hire at World Journal. (Deposition of Yih-Her Lee, dated Jan. 11, 2005 ("Lee Dep."), 22; Affidavit of Nancy Yeh, dated Sept. 26, 2006 ("Yeh Aff."), ¶ 6.) The General Affairs Department was responsible for photocopying, distributing newspapers internally, driving the company van, providing security and operating the World Journal switchboard. (Deposition of Tina Lee, dated July 24, 2006 ("Tina Lee Dep."), 34.) Yeh, born in 1938, was sixty-two at the time Plaintiff Lee was hired. (Yeh Aff. ¶ 5.) Plaintiff Lee was laid off by World Journal on April 2, 2004, at the age of fifty-two.

Plaintiff Lee's primary responsibilities included photocopying, purchasing newspapers, delivering newspapers, photocopies and supplies to other departments, and making deliveries in the company van. (Def. 56.1 Statement ¶ III.B.1.) In addition, Plaintiff Lee devoted substantial time in late 2002, and from October 2003 until his departure, to World Journal's annual children's book drive. (Lee Dep. 43-44, 60.) For his work on the book drive in 2002, Plaintiff Lee was given a $100 bonus at the suggestion of Yeh. (Lee Dep. 46.)

On November 11, 2003, Yeh asked Plaintiff Lee to make arrangements to move the photocopier that he regularly used to the second floor of the World Journal office building. (Def. 56.1 Statement ¶ III.D.3.) Plaintiff Lee questioned the decision, pointing out that the copier would be far away from the supplies kept in its current location and that this inconvenience would create additional work for himself and others, but these concerns were dismissed by Yeh. (Lee Dep. 52; Def. 56.1 Statement ¶ III.D.7.) Plaintiff Lee testified that Yeh then pointed and yelled at him saying, "At your age, I'm letting you have some food to put on the table. Otherwise, you are going to go out and starve . . . ." (Lee Dep. 53-54, 79.) Plaintiff Lee maintains that the relationship between himself and Yeh had been good up until that point. (Id. at 40.)

Following the confrontation, Yeh addressed a report to Vice President Tina Lee ("Vice President Lee") requesting disciplinary action against Plaintiff Lee.  (Def. 56.1 Statement ¶¶ III.D.7, III.D.8.)  In her report, Yeh recalls Plaintiff Lee yelling, pointing and staring at her as he criticized her decision.  (Report prepared by Nancy Yeh, dated Nov. 12, 2003 ("Yeh Rep."), ¶ 5.) "His attitude was so rude, and totally lost his reason."  (Id.)  For his insubordination, Yeh requested disciplinary action of "two counts of major misconduct."  (Id. ¶ 7.)  The report also criticizes Plaintiff Lee for frequently being unavailable for work assignments.  (Id. ¶¶ 2-3.)  In his response, Plaintiff Lee characterized Yeh's description of their confrontation as exaggerated. (Report prepared by Yih-Her Lee dated Nov. 16, 2003 ("Lee Rep."), § II.6.)  Plaintiff Lee was formally reprimanded as a result of the incident.  (Lee Dep. 63.)

After the confrontation with Yeh, Plaintiff Lee was also reassigned to work full-time in the warehouse on the children's book drive.  (Plaintiffs' Response to Defendant's Rule 56.1 Statement, dated Nov. 14, 2006, ¶ III.D.3.)  In his response, Plaintiff Lee also expressed concern that his reassignment to the book drive was a prelude to his termination or was intended to force him to quit.  (Lee Rep. § III.)

In October 2003, Plaintiff Lee had begun to devote part of his time to the book drive. (Def. 56.1 Statement ¶ III.C.6.)  In December, sometime after beginning to work in the warehouse on a full-time basis, Plaintiff Lee lost weight and began to lose his hair.  (Lee Dep. 71-72.)  He eventually lost all of his hair and also reported problems sleeping and with his immune system.  (Id. at 72.)  He attributes these medical problems to conditions in the warehouse.  (Id.)

In March 2004, World Journal merged its General Affairs Department with the Material Control Office of the Production Department to cut costs.  (Affidavit of Tina Lee, dated Sept. 26,

2006 ("Tina Lee Aff."), ¶ 3.)  World Journal provided a report from Edwin Ling addressed to

World Journal President Howard Lee and Vice President Tina Lee describing the consolidation.

(Report prepared by Edwin Ling, dated Mar. 4, 2005 ("Ling Rep."))  At the time of the

consolidation, Plaintiff Lee and another person with the title Staff Member, Pao Cheng Wu, aged

sixty-nine at the time, were laid off.  (Id. ¶ 6.)  Of the three Staff Members, only Der Kang Chu

("Chu"), one month younger than Plaintiff Lee, was retained.  (Tina Lee Aff. ¶¶ 5, 8, 9.)  Yeh

was reassigned to other duties at World Journal.  (Id. ¶ 3.)  Plaintiff Lee was dismissed after the

merger of the departments with an effective termination date of April 2, 2004.  (Def. 56.1

Statement ¶¶ III.G.4, III.G.9.)

With the departure of Lee, Yeh and Wu, the average age of the eleven employees in the

combined department was approximately fifty-four.  (Id. ¶ 10.)  Prior to their departure, the

average age of the fourteen employees in both departments was approximately fifty-five.  (Id. ¶¶

8, 9.)


1.  Adverse Employment Action

World Journal concedes that the termination of Plaintiff Lee constitutes an adverse

employment action.  (Def. Mem. 8.)  However, World Journal denies Plaintiff Lee's contention

that his reassignment to work full-time in the warehouse on the book drive was also an adverse

employment action.  (Compl. ¶ 82; Defendant's Answer, dated Dec. 28, 2004, ¶ 82.)

A plaintiff sustains an adverse employment action if he or she endures a "materially

adverse change" in the terms and conditions of employment.  Galabya v. New York City Bd. of

Educ., 202 F.3d 636, 640 (2d Cir. 2000) (citing Richardson v. New York State Dep't of

Correctional Serv., 180 F.3d 426, 446 (2d Cir. 1999)):

> To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.  A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.

Id. (citing Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)) (internal quotation marks omitted).

Plaintiff Lee did the same work for the book drive in the same location on a part time basis in 2002, suffered no ill health effects at the time and was rewarded for his efforts with a small bonus.  Therefore, his November 2003 assignment does not constitute an adverse employment action.


2.  Inference of Discrimination

The only evidence proffered by Plaintiff Lee suggesting age discrimination is the comment he attributes to Yeh: "At your age, I'm letting you have some food to put on the table.  Otherwise, you are going to go out and starve . . . ."  (Lee Dep. 79.)  World Journal argues that Yeh's comment is not probative of discrimination because the decision to terminate Plaintiff Lee's employment was not made by Yeh, but was made by Ling and approved by Vice President Lee.  (Tina Lee Aff. ¶ 5-7; See Tina Lee Dep. 35.)

 Even if Ling made the final decision to terminate Plaintiff Lee, it is reasonable to infer, as Plaintiff Lee would have us do, that Yeh's report strongly influenced Ling and Vice President Lee.   (Pl. Mem. 13.)  Therefore, the comment will be reviewed as though Yeh exercised influence over the decision-maker.  See § II.A.1 *supra*.

It is difficult to impute bias against a plaintiff in a protected class where the person making the adverse employment decision also made a recent favorable employment decision regarding the plaintiff.  Grady, 130 F.3d at 560 ("when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire"); James, 233 F.3d at 153 (plaintiff alleging age discrimination had been promoted and given a 30 percent raise in the year prior to his termination).  Plaintiff Lee was hired by Yeh in July 2000 at the age of forty-eight and was terminated less than four years later.

Further, while it is clearly possible for one member of a protected class to discriminate against another, Danzer v. Norden Systems, Inc., 151 F.3d 50, 55 (2d Cir. 1998) ("The proposition that people in a protected category cannot discriminate against their fellow class members is patently untenable."), a reasonable factfinder would be hard pressed to infer that Yeh, at age sixty-six, developed an age-based animus toward Plaintiff Lee, fourteen years her junior, within four years of hiring him.

The Court of Appeals has alternatively described the "inference of discrimination" as "preference for a person not of the protected class."  James, 233 F.3d at 154.  In the case of Plaintiff Lee, the one "Staff Member" that survived the reorganization, however, was the same age as Lee.

Based on the foregoing, the Court finds that Plaintiff Lee has failed to show circumstances giving rise to an inference of discrimination.


3.  World Journal's proffered legitimate, nondiscriminatory, reason

Even if *arguendo*, Plaintiff Lee had made a prima facie showing of age discrimination, World Journal has provided nondiscriminatory reasons for his dismissal.

A *bona fide* reduction in workforce is a legitimate nondiscriminatory reason for terminating an employee.  See James v. New York Racing Assoc., 76 F.Supp.2d 250, 256 (E.D.N.Y. 1999) (Glasser, J.), aff'd 233 F.3d 149 (citing Parcinski v. Outlet Co., 673 F.2d 34, 36 (2d Cir. 1982) ("The Act does not forbid essential corporate belt-tightening having no discriminatory motivation.")).  World Journal has shown that staff reductions were made in the course of an internal restructuring that resulted in the absorption of the General Affairs Department into the Material Control Office.

"Even within the context of a legitimate reduction-in-force, however, an employer may not discharge an employee 'because' of his age." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 136 (2d Cir. 2000).  Inevitably, in the course of a restructuring, employers must choose among employees as to who will be terminated.  In so doing, it is both lawful and consistent with common sense for an employer to choose employees who have engaged in misconduct or whose performance and qualifications are lacking relative to other employees.  See Roge v. NYP Holdings, Inc., 257 F.3d 164, 169 (2d Cir. 2001) (employee selected for reduction-in-force was believed by employer to have submitted a fraudulent disability claim).

Although World Journal does not argue that Plaintiff Lee was fired for cause, it proffers nondiscriminatory reasons that support its decision to retain Chu and not Lee.  Chu was determined to be the most capable Staff Member because he "had a more diverse skill set, provided technical support to [World Journal's] communication systems and had experience performing binding functions."  (Tina Lee Aff. ¶ 5.)  Further, Plaintiff Lee's conflict with Yeh shows that on at least one occasion he questioned the authority of his supervisor and complained

about the impact of her decisions on his workload.  Each of these constitute legitimate nondiscriminatory reasons for the selection of Plaintiff Lee to be laid off.

4.  Plaintiff Lee's evidence that World Journal's reason is a pretext for discrimination

Plaintiff Lee has failed to make out a prima facie case of discrimination because no inference of discrimination may be drawn on the basis of the single comment from Yeh.  Again, assuming *arguendo* that Plaintiff Lee made a prima facie showing, the Court next reviews the available admissible evidence to determine whether Lee has put forth evidence of pretext sufficient to show that a material issue of fact exists as to whether discrimination based on Lee's age was a motivating factor in the decision to terminate.

Plaintiff Lee must therefore demonstrate that the reasons given his selection as a part of the reduction-in-force are actually a pretext and that the real reason for his discharge was his age.  See Carlton, 202 F.3d at 136.   Plaintiff Lee could meet this burden by showing that his position was filled by a younger worker shortly after his termination.  Id.  (plaintiff was replaced by worker twenty-five years younger just three months after plaintiff was discharged, tending to refute the reduction-in-force rationale).  Another way would be to show that workers substantially younger than the Plaintiff Lee were retained.  C. Richey, Man. Employ. Discrim. & Civ Rts, § 3:91 (West 2008) (citing Showalter v. University of Pittsburgh Medical Center, 190 F.3d 231 (3d Cir. 1999) (prima facie case established by evidence employer retained workers eight years and sixteen years younger than plaintiff)).  Plaintiff Lee has made no such showings.

On the contrary, a review of admissible evidence shows that (1) Plaintiff Lee's department was eliminated by its merger with the Material Control Office; (2) the Staff Member retained in the ensuing staff reduction was the same age as Plaintiff Lee and had superior

qualifications; (3) the average age of employees across the combined department after giving effect to the merger was fifty-four (two years older than Plaintiff Lee); and (4) Plaintiff Lee clashed with his supervisor in a way that could support his termination for cause.

The Court finds that Plaintiff Lee has not made a prima facie showing of employment discrimination, and even if he had made such a showing, a review of the admissible evidence, shows that no reasonable factfinder could conclude that his termination was motivated by age discrimination. The defendant's motion is granted with respect to Plaintiff Lee.


### C. Plaintiffs Liu and Wang

The Court considers the claims of Plaintiffs Liu and Wang together because their terminations arose out of the same series of events.

Plaintiff Liu was born on July 3, 1949. (Compl. ¶ 46.) He was hired by World Journal in 1988 as a newspaper delivery person at age thirty-eight or thirty-nine. (Id. ¶ 47.) Near the end of 2003, Plaintiff Liu was promoted to Deputy Supervisor of the Circulation Department. (Def. 56.1 Statement, ¶ IV.A.9.) As Deputy Supervisor, Plaintiff Liu was responsible for overseeing delivery routes, reviewing invoices and opening new accounts. (Def. 56.1 Statement, ¶ IV.A.16.) On June 7, 2004, Plaintiff Liu was terminated at the age of fifty-four. (Deposition of Tzu-Kuang Liu, dated Sept. 28, 2005 ("Liu Dep."), 101.) He was both promoted and terminated by Edwin Ling. (Def. 56.1 Statement, ¶ IV.A.9; Liu Dep. 101.)

Plaintiff Wang was born on July 18, 1952. (Compl. ¶ 57.) He was hired by World Journal in 1985 as a delivery person at the age of thirty-two or thirty-three. (Def. 56.1 Statement, ¶ IV.A.4.) In 2004, Plaintiff Wang was Supervisor of the Circulation Department. (Id. ¶ IV.A.6.) Plaintiff Wang was responsible for making sure that newspapers were delivered

to and paid for by vendors, and for supervising the persons responsible for delivery and collections.  (Id. ¶ IV.A.7.)  On June 8, 2004, Plaintiff Wang was terminated at the age of fifty-one.  (Deposition of Chung Yung Wang dated Sept. 21, 2005 ("Wang Dep."), 108.)  Plaintiff Wang was terminated by Ling, an acquaintance of more than twenty years.  (Def. 56.1 Statement, ¶ IV.A.14.)

Within the Circulation Department, Plaintiff Liu reported to Plaintiff Wang, who reported to the Manager of the Circulation Department, Sidney Lai ("Lai").  (Def. 56.1 Statement, ¶ IV.A.10.)  Lai reported to Edwin Ling, who in addition to being the Manager of the Production Department, also held the title of Deputy General Manager of the Circulation Department.  (Id. ¶ IV.A.11.)

The World Journal, at least in certain locations, is delivered to retail vendors by delivery persons who are contractors of an entity called High Up, which is affiliated with World Journal. (Def. 56.1 Statement ¶ IV.A.17.)  Edwin Ling is the President of High Up.  (Ling Dep. 29.)  The delivery persons are answerable to World Journal employees, but also have supervisors at High Up.

Among the responsibilities of Plaintiff Liu was the oversight of deliveries and collections on the Long Island newspaper route.  In April 2004, Zhu Der Gung ("Zhu") was responsible for both the delivery of newspapers to, and the collection of money from, sellers of The World Journal along that route.   (Liu Dep. 39.)  World Journal became aware of discrepancies between the newspaper invoices and the amount of money collected by Zhu.  (Def. 56.1 Statement ¶ IV.B.2.)  Evidence of theft was found and Zhu was terminated at the direction of Ling.  (Id. ¶¶ IV.B.3, IV.B.5.)  At a meeting to discuss the matter, Plaintiff Wang noted that the practice of making the same person responsible for the delivery of papers and collection of payments was

likely to cause mistakes, whereupon Ling said that delivery and collection responsibilities should be separated on the Long Island route.  (Ling Dep. 46; Wang Dep. 50.)

Plaintiff Liu was given the responsibility to make collections on the Long Island Route in order to prevent theft in the future.  (Liu Dep. 45-46; Def. 56.1 Statement ¶ IV.B.14.)   However, Wei Shu ("Wei"), the new delivery person hired for the Long Island route, was told by Plaintiff Wang that he may be required to collect from some "remote" locations.  (Wang Dep. 52-54.)

In early May, shortly after Wei had started, Plaintiff Liu gave him all of the invoices on the Long Island route to be collected.  (Liu Dep. 91.)  Unknown to his superiors at World Journal at that time, Plaintiff Liu offered to pay Wei out of his own pocket to make the collections.  (Id. at 69.)  At a meeting that week, Plaintiff Liu was told by his managers that he "was not supposed to have the delivery person collect."  (Id. at 91.)  Plaintiff Liu and others objected that this was logistically difficult due to the several hours it took to cover the 120 mile route.  (Id. at 91-92, 101.)  Plaintiff Liu maintains that the issue of whether it was permissible for delivery persons to make collections along the Long Island route was undecided at the conclusion of the meeting, and subsequently gave Wei fifteen of the approximately thirty invoices for the following collection period in mid-May.  (Id. at 91-92.)  After this second collection period, Sidney Lai met with Plaintiff Liu to ask him why he had Wei make the collections when this had been explicitly prohibited.  (Id. at 92.)  Both Plaintiff Liu and Plaintiff Wang denied being told about such a policy.  (Id. at 95.)

Lai testified that Wei's supervisor at High Up contacted him in early June 2004 and told him that Wei was collecting payments at the direction of Plaintiffs Liu and Wang.  (Affidavit of Sidney Lai, dated Sept. 26, 2004 ("Lai Aff."), ¶ 6.)  Lai then discovered that Plaintiff Liu had not signed any invoices for the May 3-9 collection period, and only half of the invoices for the May

17-23 collection period that followed, corroborating what he had been told.  (Id. ¶ 8.)  Wei later told Lai that Plaintiff Liu had asked him not to sign the invoices for payments he collected.  (Id. ¶ 9.)  On the basis of this information, Lai concluded that Plaintiff Liu had lied when he had said he was out of the office collecting payments.  (Id. ¶ 10.)  Lai and Ling then informed Plaintiff Liu that he would be disciplined.  (Id. ¶ 11.)

After this conversation, Lai was told by Wei that he had again been contacted by Plaintiffs Liu and Wang regarding the Long Island route and that they had threatened to reduce his salary if he did not respond to further management inquiries as they directed.  (Id. ¶ 12.)  Ling was also told by Wei that Plaintiff Wang had called him many times in an attempt to cover up for Plaintiff Liu.  (Ling Dep. 90, 109.)  Plaintiff Wang admits to calling Wei once, after learning of the allegations against Plaintiff Liu.  (Wang Dep. 102.)  Lai recommended to Ling that Plaintiff Liu and Plaintiff Wang be fired.  (Lai Aff. ¶ 13.)

When Ling met with Plaintiff Wang in May 2004 to tell him that Plaintiff Liu needed to be terminated for his misconduct, Wang argued that Liu's actions did not merit termination, comparing the decision to terminate Liu, a twenty year employee of World Journal, to "push[ing] him to his death".  (Wang Dep. 74-76.)  Ling instructed Plaintiff Wang to prepare a report on Plaintiff Liu's conduct.  (Id. at 75.)  When Plaintiff Wang submitted his report to Lai, he again expressed his view that the matter was being handled unreasonably and unfairly.  (Id. at 96.)  Ling rejected Plaintiff Wang's report as too lenient, describing it as "covering up for Mr. Liu" and insisted that it be written again in a more severe manner.  (Wang Dep. 75; Ling Dep. 99.)

Ling discussed the decision to terminate Plaintiff Liu with both Lai and Vice President Lee, but maintains that the decision to terminate Liu was his own.  (Ling Dep. 105-06.)  Ling testified that although Plaintiff Liu was a personal friend and long time employee, he could not

be let off with a warning because he failed to apologize and was not sufficiently repentant. (Id. at 107.) On June 7, 2004, a few days after the submission of Plaintiff Wang's revised report, Plaintiff Liu was terminated by Ling. (Wang Dep. 106.)

On June 8, Plaintiff Wang was called to a meeting with Ling and Lai. (Wang Dep. 107, 109.) Ling testified that "[d]uring the investigation, [Plaintiff Wang] was not cooperating with us. During the meeting [with] Sidney [Lai], he got into an argument with Sidney, and I saw that his attitude was bad. . . . He was screaming loudly to his manager." (Ling Dep. 109-10.) At that meeting, Wang asked, "why is it that you have to get rid of all these senior or old colleagues like [Plaintiff Liu]?". (Wang Dep. 108.) Wang testified that the "senior or old colleagues" to whom he was referring included three persons working in the World Journal Bookstore, one of whom was unnamed, and three persons working for World Journal, including Plaintiff Lee and two others. (Id. at 114-16.) Before the meeting ended, Wang was terminated by Ling. (Id.) Plaintiff Wang was replaced by Jacob Liu who was the same age as Wang. (Def. 56.1 Statement, ¶ IV.D.16; Ling Dep. 110.)

In support of his claim of age discrimination, Plaintiff Wang testified that a manager named Shi Hui Li advised him at a time when he was interviewing "some of the delivery boys and some other workers" that he should "try to use the younger. They may actually say to me between 20 and 30 would be best." (Wang Dep. 160.) Shi Hui Li attributed the statement to Vice President Lee. (Id.)


1.  Inference of Discrimination

To show circumstances giving rise to an inference of discrimination, Plaintiffs Liu and Wang proffer only Wang's recollection of a comment made to him by another manager at some

time in the past and his assertion that their dismissals came at the same time as the termination of other older employees of World Journal.

The isolated comment of Shi Hui Li, clearly a non-decision-maker, is immaterial.  See Tomassi, 478 F.3d at 115; section II.A.1 *supra*.  Even if the view expressed in the comment is correctly attributed to Vice President Lee, remarks made in the past expressing a desire to hire younger subordinates are stray remarks insufficient to support a discrimination suit.  Saunders v. McDonald Investments, 110 F. App'x 150, 152 (2d Cir. 2004).

The alleged termination of other older workers across a large organization is not by itself probative of discrimination.  See Ward v. International Paper Co., 509 F.3d 457, 461 (8th Cir. 2007) (proffered statistical evidence of ages of other terminated employees was meaningless in the absence of information on the age of the workforce before and after reduction-in-force).  Further, in response to Plaintiff Wang's allegation that older workers across World Journal were being terminated, Vice President Lee testified that the World Journal Bookstore employees were not employees of World Journal, and that World Journal never employed one of the other persons named by Plaintiff Wang, leaving only Plaintiff Lee and another World Journal employee named Chu Tze Khen.  (Supplemental Affidavit of Tina Lee, dated Nov. 30, 2006, ¶¶ 2-3.)  Plaintiffs have offered no contradictory evidence.

In essence, Plaintiffs Liu and Wang seem to be arguing that after a combined thirty-five years of employment with World Journal, their termination was not merited by their actions.  The Court agrees that a reasonable juror could find that termination was a harsh response.  The Court, however, does not sit "as a super-personnel department to reexamine an entity's decisions on the usefulness to the enterprise of an at-will employee."  Danzer, 151 F.3d at 58 (internal

citations omitted). The role of the Court is only to consider whether such decisions were made with discriminatory intent.

On the basis of the evidence provided, Plaintiffs Liu and Wang have failed to make their prima facie showing of circumstances giving rise to an inference of unlawful discrimination.[5]

### 2. World Journal's proffered legitimate, nondiscriminatory reason

Even if *arguendo*, Plaintiffs Liu and Wang had made a prima facie showing of age discrimination, World Journal has provided nondiscriminatory reasons for their dismissal. World Journal described in detail Plaintiff Liu's misconduct leading to his termination, including: (1) the delegation of his collection responsibilities to the delivery person, in contravention of company policy; (2) an attempt to prevent Wei from cooperating in World Journal's investigation of the matter; and (3) a failure to understand and accept responsibility for this misconduct. World Journal has also provided reasons for the termination of Plaintiff Wang, including his interference with the investigation of Plaintiff Liu's misconduct and his failure to appreciate management's concerns about the misconduct, as demonstrated by his pointed disagreement with the decision to terminate Plaintiff Liu.

### 3. Plaintiff Liu and Wang's evidence that the World Journal's reason is a pretext for discrimination

---

[5] The Complaint also alleges that Plaintiff Liu suffered an adverse employment action prior to his termination when he was moved to a desk job, presumably at the time of his promotion to Deputy Supervisor. (See Compl. ¶¶ 48, 82.) Plaintiff Liu did not allege or argue this in the opposition brief. In his testimony, Plaintiff Liu merely described the new responsibilities going with his new title and offers no evidence that the promotion was a means to facilitate his departure. (Liu Dep. 12-15.) The Court therefore concludes that Plaintiff Liu failed to show that his reassignment was an adverse employment action.

Plaintiffs Liu and Wang have failed to make out a prima facie case of discrimination because no inference of discrimination may be drawn from the facts alleged. Even if Plaintiffs Liu and Wang had met their minimal prima facie burden, World Journal has put forth adequate evidence of non-discriminatory reasons for their terminations, thus returning the case to the ordinary summary judgment standard of whether, after making all reasonable inferences in favor of the nonmoving party, the factfinder can reasonably find the essential elements of the claim.

Two additional facts further foreclose the possibility of a factfinder making a reasonable finding of discrimination. First, it is uncontested that Jacob Liu, Plaintiff Wang's replacement, was the same age as Wang. No inference of discrimination can be drawn from the replacement of Plaintiff Wang by a worker of the same age. O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996) (inference of age discrimination "cannot be drawn from the replacement of one worker with another worker insignificantly younger"). Rather, a reasonable factfinder could only draw an inference of nondiscrimination from this fact.

Second, Plaintiff Liu was promoted to Deputy Supervisor by Ling the year before his termination. It is difficult to impute bias against the plaintiff's protected class where the person making the adverse employment decision against plaintiff also made a recent favorable employment decision regarding plaintiff. See § III.B.2 *supra*.

The Court finds that Plaintiffs Liu and Wang have not made prima facie showings of employment discrimination, and even if they had made such a showing, a review of the admissible evidence, shows that no reasonable factfinder could conclude that their terminations were motivated by age discrimination. The defendant's motion is granted with respect to Plaintiffs Liu and Wang.

**Conclusion**

For the foregoing reasons, defendant's motion for summary judgment with respect to all

plaintiffs is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
        January 15, 2009


_____/s/_____

I. Leo Glasser
United States Senior District Judge

Copies of the foregoing memorandum and order were electronically sent to:

<u>Counsel for Plaintiffs</u>:

Jonathan Marks
*Jonathan Marks, P.C.*
220 Fifth Avenue, 3rd Floor
New York , NY 10001

<u>Counsel for Defendant</u>:

Mark S. Mancher
*Jackson Lewis, LLP*
58 South Service Road, Suite 410
Melville, NY 11747